**IN THE SUPERIOR COURT OF THE STATE OF DELAWARE**

| | | |
|---|---|---|
| CERCACOR LABORATORIES, INC., | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | **C.A. No. N23C-05-200 PRW** |
| | ) | **CCLD** |
| METRONOM HEALTH, INC., and | ) | |
| OLAV BERGHEIM, | ) | |
| | ) | |
| Defendants. | ) | |

Submitted: March 14, 2025
Decided: April 23, 2025

*Upon Defendants' Motion for Summary Judgment,*
**DENIED, in part; GRANTED, in part.**

*Upon Plaintiff's Partial Motion for Summary Judgment*
*Regarding Defendants' Counterclaims,*
**DENIED, in part; GRANTED, in part.**

## MEMORANDUM OPINION AND ORDER

J. Clayton Athey, Esquire, Eric J. Juray, Esquire, Christine N. Chappelear, Esquire, and Kristen M. Valania, Esquire, PRICKETT, JONES & ELLIOTT, P.A., Wilmington, Delaware; Christopher M. Francis, Esquire (*argued*), Mark T. Palin, Esquire, and Brian M. Wheeler, Esquire, ATKINSON, ANDELSON, LOYA, RUUD & ROMO P.C., Pasadena, California, *Attorneys for Plaintiff Cercacor Laboratories, Inc.*

Marc S. Casarino, Esquire, and Katie Barksdale, Esquire, KENNEDYS CMK LLP, Wilmington, Delaware; Theresa A. Kristovich, Esquire (*argued*), and Tyler S. Dobberstein, Esquire, KABAT CHAPMAN & OZMER LLP, Los Angeles, California, *Attorneys for Defendants Metronom Health, Inc., and Olav Bergheim.*

**WALLACE, J.**

This case arises out of Plaintiff Cercacor Laboratories, Inc.'s, proposed acquisition of Defendant Metronom Health, Inc. (the "Proposed Transaction").[1]  To work towards finalizing the Proposed Transaction, the parties signed a binding Letter of Intent (the "LOI").[2]  Defendant Olav Bergheim signed the LOI on Metronom's behalf as the company's CEO.[3]  When the parties executed the LOI, Metronom was in dire financial straits.[4]  Accordingly, Cercacor agreed to provide Metronom with weekly cash infusions while negotiating the Proposed Transaction.[5]

But negotiations didn't go entirely to plan.  According to Cercacor, Metronom "delayed in providing key [due diligence] information, refused to allow [] access to its personnel, and failed to contract its debtholders to provide notice of the transaction and obtain [debt] releases as it had agreed to do."[6]  While Metronom says Cercacor postponed sending a draft Asset Purchase Agreement and the draft that was finally provided contained substantial inaccuracies and other issues.[7]  All

---

[1]  *See* Complaint (hereafter "Compl.") ¶¶ 1-4 (D.I. 1).

[2]  *See generally* Compl., Ex. A (hereafter "LOI") (D.I. 1).

[3]  *Id.* at 5.

[4]  Plaintiff's Opening Brief in Support of its Motion for Partial Summary Judgment (hereafter "PMSJ"), Ex. 2 ("Beach Rebuttal Report") ¶ 20 (D.I. 91) ("Metronom was not a 'going concern' and it faced imminent financial collapse.").

[5]  LOI § 8.

[6]  PMSJ at 9 (citing PMSJ, Ex. 4 ("Bergheim Dep.") at 167-68; Ex. 5 ("Wade Dep.") at 77-78; Ex. 20 ("Wade Email"); Ex. 21 ("Kang Dep.") at 88-90).

[7]  Opening Brief in Support of Defendants' Motion for Summary Judgment (hereafter "DMSJ") at 8 (D.I. 94) (citing Declaration of Michael Sanders to Motion for Summary Judgment (hereafter "Sanders Dec.") ¶ 16; Saunders Dec., Ex. 14 (hereafter "Draft APA").

that said, Metronom maintains the parties were "really, really close" to a final agreement[8] when Cercacor terminated the LOI.[9]

Before the Court are the parties' Cross-Motions for Summary Judgment. Cercacor seeks to knock out Metronom's two Counterclaims.[10] Defendants ask the Court to enter judgment as a matter of law in their favor on all Cercacor's claims.[11] For the reasons now explained, the Court partially **GRANTS** each motion and partially **DENIES** each.

## I. FACTUAL AND PROCEDURAL BACKGROUND

### A. THE PARTIES AND THE LOI'S NEGOTIATION

Plaintiff Cercacor is a Delaware corporation based in Irvine, California, that develops health and fitness technology, including a continuous glucose monitoring ("CGM") device.[12]

Defendant Metronom is a Delaware corporation with its principal place of business in Laguna Hills, California.[13] Defendant Bergheim is Metronom's CEO.[14]

---

[8] *Id.* at 12, 16, 26, 28-29 (quoting Declaration of Theresa Kristovich to Motion for Summary Judgment (hereafter "Kristovich Dec."), Ex. 3 ("Hammarth Dep.") at 252-55).

[9] *See* Compl. ¶ 37.

[10] *See* DMSJ; *see also* Defendants' Answer to Plaintiff's Complaint and Metronom's Counterclaims Against Cercacor (hereafter "Answer") at 51-54 (D.I. 34).

[11] *See* PMSJ; *see also* Compl. ¶¶ 38-86.

[12] *See* Compl. ¶ 5; Kristovich Dec., Ex. 6 ("Vo Dep.") at 24, 41.

[13] *See* Compl. ¶ 6.

[14] *See id.* ¶ 7; PMSJ, Bergheim Dep. at 50.

During the relevant period, Metronom was a pre-revenue medical device company focused on developing a CGM.[15]

As a development-stage company, Metronom had no revenue and depended on investor funds to pay its operating expenses.[16] By early 2023, that funding had dried-up, and Metronom expected to close if it didn't find an acquisition partner.[17] Metronom discussed a possible sale of its business with several potential acquisition partners.[18] After these discussion fell through, and Metronom began "moving forward to close its operations . . . and cease doing business."[19]

While Metronom explored winding down its business, Defendants held two meetings with Cercacor to discuss the Potential Transaction.[20] The first meeting discussed Metronom's "dire financial straits."[21] The parties met again on March 30, 2023, the eve of Metronom shutting its doors.[22] After that all-day meeting, the

---

[15] Sanders Dec. ¶¶ 2-3; PMSJ, Ex. 1 ("Hammarth Dep.") at 58; Kristovich Dec., Ex. 2 ("Wade Dep.") at 88-89.

[16] *See* Beach Rebuttal Report ("Metronom's balance sheet showed that it owed over $33.2 million in liabilities, $29.8 million of which consisted of loans as of February 29, 2023. Other liabilities included approximately $0.4 million of accounts payable, $1.7 million of accrued interest, and $0.4 million of accrued payroll and other employee costs."); Ex. 3 (Metronom's balance sheet showing substantial expenses and no revenue); Wade Dep. at 53-54.

[17] Sanders Dec. ¶ 2.

[18] *Id.* at ¶ 3; Wade Dep. at 54-55; Kristovich Dec., Ex. 5 ("Muhsin Dep.") at 20, 25-26.

[19] Sanders Dec. ¶ 3.

[20] Muhsin Dep. at 37, 39-40.

[21] *Id.* at 39.

[22] Sanders Dec. ¶ 4; Bergheim Dep. at 107; Wade Dep. at 33, 40-41.

parties signed the LOI.[23]

## B. THE LOI

Several LOI provisions are relevant to the parties' dispute. Section 1 states the LOI's purpose is to facilitate the Potential Transaction—by which Cercacor "would purchase [Metronom] (or the assets thereof) on a cash free, debt free . . . basis for a total consideration of 100,000 shares of [Cercacor's] common stock."[24] While the LOI didn't explicitly require Metronom to secure releases from its debtholders, during negotiations Mr. Bergheim told the Metronom board that "[w]e will need other debt holders to release their debt."[25]

The LOI conditioned Cercacor's proposal on "the satisfactory completion . . . of business, tax, accounting and legal due diligence," as well as "the negotiation and execution of a definitive transaction agreement."[26] The LOI obligated the parties to "use good faith efforts to negotiate the Definitive Agreement . . . as promptly as practicable."[27] While the parties negotiated a Definitive Agreement, Metronom agreed to "operate its business in the ordinary course consistent with past practice."[28]

To prevent Metronom from closing while the parties negotiated, Cercacor

---

[23] Sanders Dec. ¶¶ 4-12 (detailing the parties' LOI negotiations).

[24] LOI § 1.

[25] PMSJ, Ex. 11 (Email from Bergheim to Board of Directors).

[26] LOI § 2.

[27] *Id.*

[28] *Id.* § 3.

agreed to pay Metronom's "operating expenses."[29] And Cercacor made all required payments (totaling over $2 million) under the LOI.[30]

The LOI also imposed an exclusivity requirement on the parties.[31] Pursuant to that obligation, Metronom promised it would not:

> [d]uring the Exclusivity Period . . . (a) solicit, encourage others to solicit, or encourage . . . any discussions, proposals or offers regarding (1) the sale . . . or other transfer of all or any material part of the assets of the Company . . . or (2) any merger, consolidation, . . . or similar transaction involving the Company . . . other than with [Cercacor].[32]

## C. POST-LOI NEGOTIATIONS AND CERCACOR'S TERMINATION

After the parties executed the LOI, Cercacor set a two-week due diligence period.[33] Cercacor's VP of Engineering has confirmed that "technical diligence" was completed on time.[34] But according to Cercacor, Metronom "delayed in providing key information, refused to allow Cercacor access to its personnel, and

---

[29] *Id.* § 8. Specifically, Section 8 provides that "[u]pon execution of this Letter of Intent, [Cercacor] shall wire transfer to . . . [Metronom], $100,000 to cover the Company's operating expenses for March 30 and March 31, 2023. Thereafter, . . . commencing on Monday, April 3, 2023, and continuing on each Monday thereafter during the Exclusivity Period, [Cercacor] shall wire transfer to . . . [Metronom] $300,000, representing $60,000 per business day for each week during the Exclusivity Period." *Id.*

[30] PMSJ at 7; *see* DMSJ (not arguing that Cercacor failed to make any payments); Answer at 4 ("Defendants admit that Cercacor wired weekly $300,000 payments (later, daily $60,000 payments

[31] LOI § 4.

[32] *Id.* The LOI defined the "Exclusivity Period" as lasting "until the earliest of (i) the execution of a definitive agreement evidencing the Potential Transaction or (ii) the valid termination of this Letter of Intent. *Id.*

[33] Muhsin Dep. at 30-31.

[34] *Id.* at 58.

failed to contact its debtholders to provide notice of the transaction and obtain releases[.]"[35] Metronom disputes that it intentionally stalled the diligence process,[36] and attributes any delay to Cercacor's requests for not readily available information.[37] Metronom also rejects Cercacor's contention that it made no attempt to obtain debtholder releases.[38] Rather, maintains Metronom, it secured a release from CVF, LLC,[39] and was negotiating a release from Metronom's China Joint Venture (the "China JV").[40]

In April 2023, Cercacor sent Metronom a draft Asset Purchase Agreement.[41] Cercacor's deal counsel noted the draft didn't address "the China JV [or] debtholder release[.]"[42] Metronom criticizes the Draft APA as delayed and inaccurately describing the business.[43] Cercacor ascribes any holdups to Metronom's delinquent

---

[35] PMSJ at 9 (citing Bergheim Dep. at 167-68; Wade Dep. at 77-78; Wade Email; Kang Dep. at 88-90).

[36] DMSJ at 6-7 ("Cercacor's complaints about 'delays' in the due diligence process started within a few days of the signing of the LOI and are belied by the thousands of pages of information that Metronom provided in response to Cercacor's requests.").

[37] Kristovich Dec., Ex. 1 ("Bremer Dep.") at 71-77 (noting Cercacor requested test data that was "not something that [Metronom] would have typically done"; "we didn't have the exact data that they wanted.").

[38] DMSJ at 9-11 (citing Sanders Dec. ¶¶ 15, 19-21, 23; Sanders Dec., Ex. 25; Kristovich Dec., Ex. 7 ("Bergheim Dep.") at 113-14).

[39] Sanders Dec. ¶ 23; Sanders Dec., Ex. 26 (emails discussing CVF's debt-release).

[40] Sanders Dec. ¶¶ 15, 19-21; Bergheim Dep. at 116, 149.

[41] Sanders Dec. ¶ 16; PMSJ, Ex. 9 ("Movahedi Dep.") at 96-98.

[42] Movahedi Dep. at 97-98.

[43] *E.g.*, Sanders Dec. ¶ 16.

and insufficient due diligence.[44] Delays notwithstanding, the parties began exchanging redline drafts of the APA.[45]

While due diligence and drafting efforts were underway, Mr. Bergheim sought to renegotiate his Proposed Transaction compensation—requesting 10% of Cercacor shares.[46] Mr. Bergheim denies trying to renegotiate for his own benefit,[47] regardless Cercacor rejected any change, and the diligence process continued.[48]

Unsatisfied with the negotiations, Cercacor sent Metronom and Mr. Bergheim demand letters in May 2023 (the "Demand Letters").[49] Those Demand Letters accused Defendants of "intentionally and unreasonably delay[ing] the closing of the Proposed Transaction[,]" and threatened litigation unless Defendants cured the various breaches.[50] Two weeks later, Cercacor terminated the LOI.[51] And Cercacor sued later that same month.[52]

---

[44] Beach Rebuttal Report ¶¶ 64-68; Movahedi Dep. at 98-99.

[45] Sanders Dec. ¶ 16; Sanders Dec., Exs. 15-16 (emails showing the parties discussing a meeting regarding the draft APA); 26-29 (APA drafts the parties exchanged during negotiations).

[46] PMSJ, Hammarth Dep. at 183-184; *see* PMSJ, Ex. 22 ("Muhsin Dep.") at 66-70.

[47] Bergheim Dep. at 138-39.

[48] *Id.* at 181-82; Bremer Dep. at 56-57.

[49] Compl., Exs. B-C (demand letters sent to Mr. Bergheim and Metronom from Cercacor).

[50] Compl., Ex. C; *see* Compl., Ex. B.

[51] *See* PMSJ, Ex. 23 (email terminating the LOI).

[52] *See generally* Compl.

## D. THIS LITIGATION

Cercacor's Complaint contains eight causes of action: (1) "Declaratory Judgment Against Metronom," (2) "Breach of the Binding Letter of Intent Against Metronom," (3) "Breach of the Implied Covenant of Good Faith and Fair Dealing Against Metronom," (4) "Fraudulent Inducement Against Metronom and [Mr.] Bergheim," (5) "Tortious Interference with Contractual Relations Against Bergheim," (6) "Tortious Interference with Prospective Business Relations Against Bergheim," (7) "Conversion Against Metronom," and (8) "Unjust Enrichment Against Metronom."[53]

After the Court denied Defendants' pleading-stage motion to dismiss from the bench,[54] Defendants filed their Answer.[55] Therein, Defendants included two Counterclaims against Cercacor: (1) "Breach of Contract," and (2) "Breach of the Implied Covenant of Good Faith and Fair Dealing."[56] Cercacor answered those Counterclaims.[57]

After completing all discovery, Cercacor filed its Motion for Partial Summary

---

[53] *Id.* ¶¶ 38-86.

[54] *See* D.I. 32 (Judicial Action Form).

[55] *See generally* Answer.

[56] *Id.* at 51-54.

[57] *See generally* Plaintiff-Counterclaim Defendant's Reply to Metronom Health, Inc.'s Counterclaims (D.I. 35).

Judgment and Defendants their Motion for Summary Judgment.[58] The parties then filed their respective opposition and reply briefs,[59] and last month the Court held oral argument on their motions.[60] With the pretrial conference and trial now looming, the Court resolves their respective prayers for summary judgment.

## III. STANDARD OF REVIEW

Summary Judgment is proper if no genuine issue of material fact exists and the movant is entitled to judgment as a matter of law.[61] In determining whether a material factual dispute exists, the Court "is not permitted to weigh the evidence or resolve conflicts presented by the pretrial discovery."[62] Additionally, "[t]he facts must be viewed in the manner most favorable to the nonmoving party."[63] The movant has the burden "to demonstrate its claim is supported by the undisputed facts."[64] If the motion "is properly supported, the burden shifts to the non-moving

---

[58] *See generally* PMSJ; DMSJ.

[59] *See generally* Opposition to Plaintiff's Motion for Partial Summary Judgment (hereafter "PMSJ Opp'n") (D.I. 97); Plaintiff's Answering Brief in Opposition to Defendants' Motion for Summary Judgment (hereafter "DMSJ Opp'n") (D.I. 98); *see* Plaintiff's Reply Brief in Support of Its Motion for Partial Summary Judgment (hereafter "PMSJ Reply") (D.I. 104); Reply Brief in Support of Defendants' Motion for Summary Judgment (hereafter "DMSJ Reply") (D.I. 105).

[60] *See* D.I. 108 (Judicial Action Form).

[61] *Radulski v. Liberty Mutual Fire. Ins. Co.*, 2020 WL 8676027, at *3 (Del. Super. Ct. Oct. 28, 2020).

[62] *Telxon Corp. v. Meyerson*, 802 A.2d 257, 262 (Del. 2002).

[63] *Judah v. Delaware Trust Co.*, 378 A.2d 624, 632 (Del. 1977) (internal citations omitted).

[64] *Radulski*, 2020 WL 8676027, at *3 (citing *Moore v. Sizemore*, 405 A.2d 679, 680 (Del. 1979)).

party to show that there are material issues of fact."[65]

## IV. ANALYSIS

### A. CERCACOR'S COUNTS II, V, AND VI SURVIVE THE DEFENDANTS' MOTION; BUT ITS COUNTS I, III, IV, VII, AND VIII DON'T.

#### 1. Plaintiff's Declaratory Judgment Claim (Count I) is duplicative of its Breach-of-Contract (Count II) and Implied Covenant (Count III) Claims.

Count I seeks declarations that "([1]) Metronom materially breached the LOI and ([2]) Metronom breached the implied covenant of good faith and fair dealing."[66] Metronom condemns these requests as merely "a rehash of [Cercacor's] breach of contract and breach of the covenant of good faith and fair dealing claims."[67] Accordingly, Metronom argues Count I is "'impermissibly duplicative[.]'"[68]

Cercacor contends Count I isn't duplicative.[69] In Cercacor's view, "Count I seeks a declaratory judgment that Metronom materially breached the LOI and breached the implied covenant of good faith and fair dealing,"[70] while Counts II and

---

[65] *Lesh v. ev3 Inc.*, 2013 WL 2470308, at *3 (Del. Super. Ct. Apr. 15, 2013) (citations omitted).

[66] Compl. ¶ 49.

[67] DMSJ at 15-16.

[68] *Id.* (quoting *Blue Cube Spinco LLC v. Dow Chem. Co.*, 2021 WL 4453460, at *17 (Del. Super. Ct. Sept. 29, 2021) ("Where a claimant seeks both common law and declaratory relief for the same injury and on the same terms, the declaratory judgment claim is impermissibly duplicative unless it is pleaded as distinct from the common-law claim.").

[69] DMSJ Opp'n at 15-17.

[70] *Id.* at 16-17 (citing Compl. ¶ 49).

III are claims for damages.[71]  So to Cercacor, resolution of Count I would not fully address Counts II and III.[72]

A declaratory judgment "is a statutory action . . . meant to provide relief in situations where a claim is ripe but would not support an action under common-law."[73]  Accordingly, "there is no need for a declaratory judgment . . . where a claimant merely has repackaged in the language of a declaration an adequately-pleaded affirmative count."[74]  To survive summary judgment, "a declaratory count must be 'distinct' from the affirmative counts in the complaint *such that a decision on the affirmative counts would not resolve the declaratory count*."[75]  In the norm, Courts reject a declaratory judgment claim on this basis only if it is "wholly and completely duplicative."[76]

Here, Count I is wholly and completely duplicative of Cercacor's other claims.  Cercacor asks for "a declaration that: (i) Metronom materially breached the LOI and (ii) Metronom breached the implied covenant of good faith and fair

---

[71]  *Id.* at 17 (citing Compl. ¶¶ 55, 61).

[72]  *Id.*

[73]  *Great Hill Equity Partners IV, LP v. SIG Growth Equity Fund I, LLLP*, 2014 WL 6703980, at *29 (Del. Ch. Nov. 16, 2014).

[74]  *Blue Cube*, 2021 WL 4453460, at *15 (internal quotes omitted).

[75]  *Id.* (quoting *Sweetwater Point, LLC v. Kee*, 2020 WL 6561567, at *12 (Del. Super. Ct. Nov. 5, 2020) (emphasis added)).

[76]  *DuPont De Nemours, Inc. v. Hemlock Semiconductor Operations LLC*, 2024 WL 3161799 (Del. Super. Ct. June 10, 2024) (cleaned up).

dealing."[77] This claim parrots Counts II and III.[78] Cercacor argues Count I is not duplicative because it does not include Counts II and III's damage language.[79] Perhaps so. But the test is if the affirmative claims necessarily resolve the declaratory judgment request, not vice versa.[80] Because whether Metronom breached the LOI or the implied covenant will necessarily be decided, positively or negatively, via resolution of Counts II and III, there's just no need for a declaration.[81] The Court **GRANTS** Metronom's motion on Cercacor's Count I.

## 2. A genuine issue of material fact exists as to whether Metronom breached the LOI (Count II).

Cercacor's Count II alleges Metronom breached the LOI.[82] To prevail on a breach-of-contract claim, one "must show the existence of a contract, [] a breach of that contract, and damages resulting from the [] breach."[83] Here, the parties dispute

---

[77] Compl. ¶ 49.

[78] *Compare id.* ¶¶ 38-49 (Cercacor's declaratory judgment claim), *with id.* ¶¶ 50-55 (Cercacor's breach-of-contract claim), *and id.* ¶¶ 56-61 (Cercacor's implied covenant claim).

[79] DMSJ Opp'n at 17.

[80] *See Blue Cube*, 2021 WL 4453460, at *16 (explaining upon dismissal of a declaratory judgment claim: "A successful breach-of-contract claim would afford the Company "any and all" coverage it proves—there would be nothing more to declare. And an unsuccessful breach-of-contract claim would defeat the declaration—there could be no required indemnification.").

[81] *Intermec IP Corp. v. TransCore, LP*, 2021 WL 3620435, at *25 (Del. Super. Aug. 16, 2021).

[82] Compl. ¶ 53. Count II alleges Metronom breached the LOI by: "([1]) failing to timely contract debtholders and obtain releases; ([2]) improperly delaying and making burdensome efforts to negotiate a final agreement; ([3]) attempting to identify alternative buyers; ([4]) refusing to cooperate with Cercacor's due diligence requests; and ([5]) utilizing funds from Cercacor for uses beyond operating expenses."

[83] *Boissonneault v. Delaware Podiatric Medicine, P.A.*, 2024 WL 5055538, at *3 (Del. Super. Ct. Dec. 9, 2024) (citing *GMG Capital Invs., LLC v. Athenian Venture Partners I. L.P.*, 36 A.3d 776,

only the breach element.[84]

Metronom advances two primary arguments to support its position that neither the LOI's text nor the evidence supports Cercacor's breach-of-contract claim.[85] First, the LOI does not require "Metronom [] to secure releases from [] [] its debtholders[.]"[86] Second, Cercacor, not Metronom, caused the delay in negotiating the Proposed Transaction by waiting 26 days to send the Draft APA.[87]

Cercacor argues the term "cash free, debt free" in the LOI required Metronom to secure debtholder releases.[88] Cercacor asserts that interpretation is confirmed by: the ordinary meaning of "cash free, debt free";[89] statements by Cercacor during negotiations;[90] and evidence that show[s] [] Metronom understood [] the LOI required releases[.]"[91] Therefore, Metronom's failure to obtain debt releases breached the LOI.[92] Cercacor counters Metronom's other arguments as contradicted

779 (Del. 2012)).

[84] *See supra* III.A.2.

[85] DMSJ at 15-16.

[86] *Id.* at 15.

[87] *Id.* at 15-16.

[88] DMSJ Opp'n at 18-21.

[89] *Id.* at 18-19 (citing DMSJ Opp'n, Ex. 5 ("Beach Rebuttal Report") at 12-15; Ex. 6 ("Movahedi Dep.") at 66-71.

[90] *Id.* at 19-20 (citing Movahedi Dep. at 74-75; DMSJ Opp'n, Ex. 7 ("Muhsin Dep.") at 54; Ex. 8 (emails during negotiations of the LOI)).

[91] *Id.* at 20 (citing DMSJ Opp'n, Ex. 1 ("Bergheim Dep.") at 107-15; Muhsin Dep. at 57, 92; Ex. 9 (email from Mr. Bergheim to Board of Directors)).

[92] *Id.* at 21.

-13-

by evidence showing that Cercacor participated in diligence and Metronom purposefully delayed its responses to due diligence requests.[93]

The parties first breach-of-contract dispute is one of interpretation—they disagree regarding whether the term "cash free, debt free" obligated Defendants to secure releases from Metronom's debtholders.[94]  When "the issue before the Court concerns contract interpretation, 'summary judgment is appropriate only if the contract in question is unambiguous.'"[95]  A term is ambiguous when it is "reasonably [] [] susceptible of different interpretations."[96]

Under that standard, the phrase "cash free, debt free" in the LOI is ambiguous. Both parties invoke expert testimony,[97] fact witness depositions,[98] and extrinsic evidence,[99] to support their interpretation of "cash free, debt free."  While the weight

---

[93]  *Id.* at 21-22.

[94]  DMSJ at 15; DMSJ Opp'n at 18-21.

[95]  *LG Electronics Inc. v. Invention Investment Fund I, L.P.*, 2024 WL 4675050, at *3 (Del. Super. Ct. Sept. 25, 2024) (quoting *Active Day OH, Inc. v. Wehr*, 2024 WL 3201167, at *3 (Del. Super. Ct. June 27, 2024)).

[96]  *Zenith Energy Terminals Joliet Holdings LLC v. CenterPoint Props. Tr.*, 2023 WL 615997, at *9 (Del. Super. Ct. Jan. 23, 2023).

[97]  *See* Beach Rebuttal Report at 12-16 (positing that inclusion of the term "cash free, debt free" evidenced Cercacor's intent "to see specific agreements from each note holder that they would release Metronom from its obligations."); Supplemental Declaration of Theresa A. Kristovich to Opposition to Plaintiff's Motion for Partial Summary Judgment, Ex. 11 (Crowley Expert Report) at 3-6 (opining:  "The wording 'cash free, debt free basis', as it is generally used, does not imply a requirement that the target company eliminate debt prior to closing.").

[98]  *See* Wade Dep. at 28-37 (asserting the LOI did not require Metronom to secure debtholder releases); Movahedi Dep. at 32-33 (same), 66-71 (suggesting the term "cash free, debt free" required Metronom to secure debtholder releases).

[99]  *See* DMSJ Opp'n, Ex. 8 (emails during LOI negotiations stressing Cercacor's need to "confirm

-14-

of this evidence suggests the parties intended the LOI to require Metronom to secure debtholder release, the Court doesn't weigh evidence on a summary judgment motion. Because "cash free, debt free" is reasonably susceptible to more than one interpretation, the LOI is ambiguous regarding whether Metronom had to secure debtholder releases. And that precludes summary judgment on that issue.

Defendants' other breach argument falls for similar reasons. Whether Metronom "improperly delayed . . . efforts to negotiate a final agreement; attempted to identify alternative buyers; refused to cooperate with Cercacor's due diligence requests; and utilized funds from Cercacor for uses beyond operating expenses,"[100] are all factual issues unsuited for resolution on summary judgment. Cercacor cites evidence supporting its position on each issue.[101] Hence, a genuine issue of material fact exists regarding if Metronom breached the LOI. So, the Court must **DENY** Defendants' motion on Cercacor's Count II.

### 3. Cercacor's Implied Covenant Claim (Count III) fails.

Count III alleges "Metronom [] unfairly and wrongfully interfered with

---

[Metronom] are extinguishing their debt as a closing condition."); Ex. 9 (email from Mr. Bergheim to the Metronom Board stating, "We will need other debt holders to release their debt."); Sanders Dec. ¶ 13.

[100] Compl. ¶ 53 (cleaned up).

[101] *See* DMSJ Opp'n, Ex. 11 ("Kang Dep.") at 88-91 (suggesting Metronom unreasonably delayed its due diligence responses); Exs. 19-25 (same); Movahedi Dep. 160162 (suggesting Mr. Bergheim intentionally stalled negotiation of the final agreement); DMSJ Opp, Ex. 14 (same); Ex. 26 (same).

Cercacor's rights to receive the benefits of the LOI . . . in bad faith."[102]  At the outset, Metronom notes "conduct that is allegedly a breach of an express contract [] cannot serve as the basis for" an implied covenant claim.[103]  Metronom insists Cercacor hasn't met the standard to imply a contractual obligation.[104]  Too, Metronom contends Cercacor's implied covenant claim is factually insufficient.[105]

Cercacor asserts Count III is based on an implicit obligation "for a speedy due diligence period and a need for Metronom to secure debt releases."[106]  Cercacor argues that is a cognizable claim given the implied convenant's gap-filler role.[107]

The implied covenant of good faith and fair dealing is inherent in all contracts and "supplies terms to fill gaps in the express provisions of a specific agreement."[108] The implied covenant does not "require that a party have acted in subjective good faith."[109]  Yet Count III's language seeks to impose a general duty of good faith.[110]

---

[102]  Compl. ¶¶ 59-60.

[103]  DMSJ at 17 (citing *Collab9, LLC v. En Pointe Techs. Sales, LLC*, 2019 WL 4454412, at *2 (Del. Super. Ct. Sept. 17, 2019)).

[104]  *Id.* at 19.

[105]  *Id.* at 17-18.  Specifically, Defendants argue (1) "the LOI had no express requirement that due diligence be completed in a particular time frame"; (2) "there was no timeline for producing a completed agreement . . . [and] the terms of the agreement were being worked through"; and (3) "any notion that the LOI implied that Metronom would secure releases from its debtholders is belied by the fact that there is no such requirement in the agreement." *Id.*

[106]  DMSJ Opp'n at 22-23.

[107]  *Id.* (citing *Namec v. Shrader*, 991 A.2d 1120, 1127 (Del. 2010)).

[108]  *Allen v. El Paso Pipeline GP Co., L.L.C.*, 113 A.3d 167, 182 (Del. Ch. 2014).

[109]  *Id.* at 182-83 (internal citations omitted).

[110]  Compl. ¶¶ 59-60 (alleging Metronom "unfairly and wrongfully interfered with Cercacor's right

-16-

In its briefing, Cercacor clarifies that Count III is based on a requirement "for a speedy due diligence period and a need for Metronom to secure debt releases."[111] But "the implied covenant 'does not apply when the contract addresses the conduct at issue,' [] only 'when the contract is truly silent' concerning the matter at hand."[112]

Here, the LOI itself addresses both of Cercacor's implied covenant theories. The LOI's requirement that the parties "use good faith efforts to negotiate the Definitive Agreement . . . as promptly as practicable," controls whether Metronom was sufficiently "speedy" in complying with Cercacor's due diligence requests.[113]

Regarding debtholder releases, Cercacor repeatedly insists: "The LOI required (and the parties understood) that Metronom was required to obtain releases from its debtholders."[114] Cercacor calls out the phrase "cash free, debt free" as imposing that obligation.[115] So, Cercacor's own representations suggest the LOI has no "gap" for the implied covenant to fill. What is more, the phrase "case free, debt free" evidences the parties' expression of some obligation concerning Metronom's

---

to receive the benefits of the LOI . . . in bad faith.").

[111] DMSJ Opp'n at 22-23.

[112] *Oxbow Carbon & Minerals Holdings, Inc. v. Crestview-Oxbow Acquisition, LLC*, 202 A.3d 482, 507 (Del. 2019) (quoting *Nationwide Emerging Managers, LLC v. Northpointe Holdings, LLC*, 112 A.3d 878, 896 (Del. 2015); *Allied Capital Corp. v. GC–Sun Holdings, L.P.*, 910 A.2d 1020, 1033 (Del. Ch. 2006).

[113] LOI § 2.

[114] DMSJ Opp'n at 5-7, 18-22; PMSJ at 8, 26-27.

[115] *E.g.*, PMSJ at 26-27.

debt. In short, the LOI isn't truly silent on the debt issue.

Given that the "implied covenant grants no substantive rights that a claimant failed to extract during negotiations,"[116] the Court will not imply an obligation to secure debtholder releases if the LOI does not provide such a duty.[117] The Court **GRANTS** Defendants' motion on Cercacor's Count III.

### 4. Cercacor doesn't point to any falsity sufficient to sustain its Fraudulent Inducement Claim (Count IV).

Count IV alleges Mr. "Bergheim and Metronom fraudulently induced Cercacor to enter into the LOI[.]"[118] To prevail on a fraudulent inducement theory, the plaintiff must show: "1) a false representation . . . ; 2) the defendant's knowledge or belief that the representation was false, or was made with reckless indifference to the truth; 3) an intent to induce the plaintiff to act or to refrain from acting; 4) the plaintiff's action or inaction taken in justifiable reliance upon the representation; and 5) damage."[119]

---

[116] *Brightstar Corp. v. PCS Wireless, LLC*, 2019 WL 3714917, at *12 (Del. Super. Ct. Aug. 7, 2019) (citing *Allied Capital*, 910 A.2d at 1032-33).

[117] *Dunlap v. State Farm Fire and Cas. Co.*, 878 A.2d 434, 442 (Del. 2005) ("quasi-reformation however, 'should be [a] rare and fact-intensive' exercise, governed solely by 'issues of compelling fairness.'" (quoting *Cincinnati SMSA Ltd. Partnership v. Cincinnati Bell Cellular Sys. Co.,* 708 A.2d 989, 992-93 (Del. 1998)).

[118] Compl. ¶ 63. Specifically, Count IV challenges four allegedly fraudulent representations: (1) "that CVF was 'on board'" with the Proposed Transaction; (2) "that [Mr. Bergheim]" would obtain releases from Metronom's debtholders, consistent with the LOI"; (3) "that [Defendants] would abstain from discussions for the sale of Metronom to alternative buyers"; and (4) "that Metronom would continue to operate its business in the ordinary course and would use the funds from Cercacor solely to cover those operating expenses." *Id.* ¶¶ 62-68.

[119] *Lord v. Souder*, 748 A.2d 393 (Del. 2000) (citing *Stephenson v. Capano Dev., Inc.*, 462 A.2d

While fraudulent inducement generally requires a "misrepresentation[] of present facts (rather than merely [a statement] of future intent),"[120] one might "state a claim . . . by showing that the defendant had an actual present intent not to perform [] its promises."[121] That said, a plaintiff "cannot 'bootstrap' a claim of breach of contract into a claim of fraud merely by alleging that a contracting party never intended to perform."[122] The Plaintiff must cite "'specific facts that [show] . . . the promisor had no intention of performing at the time the promise was made.'"[123] With that in mind, "the mere fact that a party did not follow through on its promise is not sufficient to state a claim for fraudulent inducement."[124]

Metronom contends Count IV impermissibly bootstraps Cercacor's breach-of-contract claim.[125] Metronom suggests that bootstrapping disqualifies three of the

1069, 1074 (Del. 1983)).

[120] *Carrow v. Arnold*, 2006 WL 3289582, at *8 (Del. Ch. Oct. 31, 2006) (internal quotes omitted), *aff'd*, 2007 WL 2588861 (Del. Sept. 7, 2007).

[121] *CRE Niagara Holdings, LLC v. Resort Grp., Inc.*, 2022 WL 1749181, at *14 (Del. Super. May 31, 2022).

[122] *Iotex Commc'ns, Inc. v. Defries,* 1998 WL 914265, at *4 (Del. Ch. Dec. 21, 1998); *see EZLinks Golf, LLC v. PCMS Datafit, Inc.*, 2017 WL 1312209, at *3 (Del. Super. Ct. Mar. 21, 2017).

[123] *CSH Theatres, LLC v. Nederlander of San Francisco Assocs.*, 2015 WL 1839684, at *21 (Del. Ch. Apr. 21, 2015) (quoting *MicroStrategy*, 2010 WL 5550455, at *15). "Indeed, couching an alleged failure to comply with the contract at issue as a failure to disclose an intention to take certain actions arguably inconsistent with that contract is 'exactly the type of bootstrapping this Court will not entertain.'" *MicroStrategy*, 2010 WL 5550455, at *17 (quoting *BAE Sys. N. Am. Inc. v. Lockheed Martin Corp.,* 2004 WL 1739522, at *8 (Del. Ch. Aug. 3, 2004)).

[124] *CRE Niagara*, 2022 WL 1749181, at *15.

[125] DMSJ at 21-25.

four representations on which Count IV relies.[126] Namely, Metronom insists those representations were forward-looking promises, not factual statements.[127] Regarding the fourth challenged statement,[128] Metronom says it can't sustain a fraudulent inducement claim because it was true.[129]

Cercacor resists the notion that Count IV bootstraps its breach-of-contract claim, saying Metronom knowingly made false contractual representations.[130] Cercacor asserts Count IV "is premised on [Mr.] Bergheim seeking alternative buyers" as leverage to renegotiate the Proposed Transaction.[131] Cercacor maintains the evidence shows Mr. Bergheim complained about the deal terms, and "told Cercacor [] that other buyers were interested in Metronom."[132] Cercacor also asserts its position related to debtholder releases is distinct from Count II.[133] These

---

[126] *Id.* at 22-24.

[127] DMSJ at 21-23. These representations include statements that Defendants: (1) "would abstain from discussions for the sale of Metronom to alternative buyers"; (2) "would use funds from Cercacor solely to cover operating expenses of Metronom's business in the ordinary course fails for the same reasons"; and (3) "would obtain releases from Metronom's debtholders, consistent with the LOI." *Id.*

[128] The Complaint alleges Mr. Bergheim "represented to Cercacor that CVF was 'on board'" with the transaction. Compl. ¶ 64.

[129] DMSJ at 24-25 (citing Sanders Dec.¶ 23; DMSJ, Ex. 26 (email communications between Ms. Movahedi and Mr. Sanders)).

[130] DMSJ Opp'n at 24-30 (citing *Anschutz Corp. v. Brown Robin Cap. LLC*, 2020 WL 3096744, at *15 (Del. Ch. June 11, 2020)).

[131] *Id.* at 26-28 (citing Compl. ¶¶ 63-65).

[132] *Id.* ("Bergheim induced Cercacor into executing the LOI so that he could use its cash infusions improperly to extract further concessions for himself.").

[133] *Id.* at 29-30. Cercacor's opposition brief does not directly respond to Metronom's contention that the representation that CVF was "on board" with the Proposed Transaction was not false, other

arguments, however, are unconvincing.

Cercacor cites no evidence showing Defendants lacked intent to perform their intra-LOI promises when they made those representations.[134] Instead, Cercacor relies on Defendants conduct *after* the parties executed the LOI.[135] This evidence does not show Defendants lacked intent to fulfill their promises *when they signed the LOI*. Rather, Cercacor's proffered evidence supports its position that Defendants breached the LOI and impermissibly bootstraps the breach-of-contract claim. Thus, the forward-looking statements Cercacor cites do not support Count IV.

The fourth allegedly fraudulent statement Cercacor invokes is undoubtably a factual representation.[136] But only a false representation of present material fact can

---

than a blanket statement that "Defendants' statements relating to each of Cercacor's four claims under Count IV were false." *Id.* at 30.

[134] DMSJ at 23; Compl. ¶¶ 64-66. The at-issue representations are that Defendants would: (1) "abstain from discussions for the sale of Metronom to alternative buyers"; (2) "use funds from Cercacor solely to cover operating expenses of Metronom's business in the ordinary course"; and (3) "obtain releases from Metronom's debtholders, consistent with the LOI[.]"

[135] *See* DMSJ Opp'n at 27 ("following the LOI, he immediately began complaining about the terms of the deal and attempted to extract significant and substantial concessions all while threatening Cercacor with the possibility of other buyers. Cercacor's CFO testified that Bergheim, in connection with his improper requests for additional compensation outside of the LOI, told Cercacor representatives that other buyers were interested in Metronom." (citing DMSJ Opp'n, Ex. 4 ("Hammarth Dep.") at 40-41, 242-43)); *id.* at 28 ("shortly after the LOI, Bergheim began improperly demanding an additional 10% of Cercacor stock for himself and another Metronom employee—in other words, demanding 13,617,679." (citing Bergheim Dep. at 106; Hammarth Dep. 183-85; Muhsin Dep. at 68; Ex. 26)); *id.* at 29 ("the undisputed evidence shows and as Bergheim himself admits, he knew from the beginning that he was required to obtain releases, communicated that necessity to the Metronom board and yet delayed -contacting the debtholders." (citing Bergheim Dep. at 107-15; Ex. 9)).

[136] Compl. ¶ 64 ("that CVF was 'on board'" with the Proposed Transaction).

support a fraudulent inducement claim.[137]  Metronom cites evidence suggesting the statement's truth.[138]  While Cercacor makes no argument specific to the CVF representation and cites no evidence to support its bald assertion of falsity.  Indeed, the most Cercacor does here is mouth the conclusory statement that "each of Cercacor's four claims under Count IV were false."[139]  Accordingly, Cercacor hasn't carried its rebuttal burden "to establish the existence of material issues of fact" regarding the CVF statement's falsity.[140]  The Court **GRANTS** Defendants' Motion on Cercacor's Count IV.

**5. There is a genuine issue of material fact as to whether Mr. Bergheim tortiously interfered with the LOI (Count V) and the Proposed Transaction (Count VI).**

Count V alleges Mr. Bergheim "demand[ed] that he personally receive stock in Cercacor, and threaten[ed] the transaction if he was not permitted to profit personally from the" Proposed Transaction.[141]  In the same vein, Count VI alleges Mr. Bergheim "intentionally interfered . . . by . . . shopping Metronom to other buyers in violation of the exclusivity provision, interfering with Metronom's provision of

---

[137] *Pinnacle IV, L.P. v. CyberLabs AI Holdings Limited*, 2024 WL 3252672, at *4 (Del. Super. Ct. July 1, 2024) ("One of the elements required for a claim for fraudulent inducement is a false representation of material fact.").

[138] DMSJ at 25 (citing Sanders Dec. ¶ 23; DMSJ, Ex. 26).

[139] *See* DMSJ Opp'n at 24-30.

[140] *Lesh*, 2013 WL 2470308, at *3.

[141] Compl. ¶¶ 69-74.

information necessary for Cercacor's due diligence investigation, and ignoring Cercacor's attempts to reach a final agreement[.]"[142]

To prevail on a tortious interference claim, the complainer must show "(1) a contract, (2) about which defendant knew and (3) an intentional act that is a significant factor in causing the breach of such contract (4) without justification (5) which causes injury."[143] Defendants' primary argument regarding Counts V and VI are identical—"Cercacor has no facts supporting its claim that Mr. Bergheim intentionally interfered with completion of the [Proposed] [T]ransaction."[144]

Defendants' overarching argument regarding Counts V and VI is that "Mr. Bergheim's attempts to negotiate" increased compensation, "do not constitute tortious interference[.]"[145] Metronom contends it continued with the due diligence, provided revisions to Draft APA and continued to pursue the Proposed Transaction until Cercacor's Termination.[146] Metronom notes it did all this despite the fact that

---

[142] *Id.* ¶¶ 75-79.

[143] *Aspen Advisors LLC v. United Artists Theatre Co.*, 861 A.2d 1251, 1265-66 (Del. 2004) (internal quotes omitted). Similarly, the elements of tortious interference with a prospective business opportunity are: "'[1] the reasonable probability of a business opportunity, [2] the intentional interference by defendant with that opportunity, [3] proximate causation, and [4] damages.'" *CPM Industries, Inc. v. ICI Americas, Inc.*, 1990 WL 28574, at *1 (Del. Super. Feb. 27, 1990) (quoting *DeBonaventura v. Nationwide Mutual Ins. Co.*, 419 A.2d 942, 947 (Del. Ch. 1980)).

[144] DMSJ at 27-30.

[145] *Id.* at 25-30.

[146] *Id.* at 26.

"Cercacor declined to make any changes to the terms of the LOI."[147]

Cercacor says the facts show Mr. Bergheim directed "Metronom's bad faith delay" during the diligence process, "to get himself a personal payout."[148] Cercacor contends improperly attempting to renegotiate the LOI while purposefully delaying diligence is an intentional, interfering act.[149] Cercacor's termination of the LOI is immaterial, because Metronom's breach of the LOI was the cause.[150]

Resolution of the parties' tortious interference arguments is a close call. On one hand, Defendants are correct that no proffered evidence shows Mr. Bergheim affirmatively directed Metronom to breach the LOI. Yet, Cercacor cites evidence implying Metronom stalled negotiations while Mr. Bergheim attempted to renegotiate his compensation.[151] Most notably, Cercacor provides deposition testimony suggesting Mr. Bergheim told his deal counsel to not respond to the Draft APA.[152] While it may be doubtful that Cercacor can show Mr. Bergheim's "sole

---

[147] *Id.*

[148] DMSJ Opp'n at 31-33.

[149] *Id.* at 33.

[150] *Id.* at 35.

[151] *See* Muhsin Dep. at 67-69 (describing Mr. Bergheim's attempt to renegotiate the Proposed Transaction compensation and his threat to walk away from the deal); DMSJ Opp'n, Ex. 13 ("Kiani Dep.") at 42-45 (same); Compl., Ex. C (Demand Letter detailing Mr. Bergheim's allegedly insufficient efforts negotiating the Proposed Transaction); Ex. B. (Demand Letter detailing Metronom's allegedly insufficient efforts negotiating the Proposed Transaction).

[152] *See* Movahedi Dep. at 198.

motive" was interfering with the LOI,[153] given the non-movant friendly summary judgment standard Cercacor's tortious interference claims survive.[154] Defendants' motion on Cercacor's Counts V and VI is **DENIED**.

### 6. Cercacor's Conversion Claim (Count VII) is duplicative and legally insufficient.

Cercacor's Count VII alleges "Defendants committed conversion" by "breaching the LOI, and unduly delaying and burdening the completion of a final purchase agreement."[155] Conversion is an "'act of dominion wrongfully exerted over the property of another, in denial of his right, or inconsistent with it.'"[156] Metronom contends Count VII fails because Cercacor does not identify any recoverable property independent of the LOI.[157] Instead, Count VII ties Cercacor's recovery to a breach of the LOI.[158] Cercacor only replies that Count VII survives because "the parties [] dispute whether the LOI governs."[159]

To assert a conversion claim "along with a contract claim, the plaintiff must

---

[153] *WaveDivision Holdings, LLC v. Highland Capital Management, L.P.*, 49 A.3d 1168, 1174 (Del. 2012) ("Only if the defendant's *sole* motive was to interfere with the contract will this factor support a finding of improper interference.").

[154] *In re Wheelabrator Technologies, Inc. Shareholders Litigation*, 663 A.2d 1194, 1198 (Del. Ch. 1995) (citing *Gilbert v. El Paso Co.*, 575 A.2d 1131, 1142 (Del. 1990)).

[155] Compl. ¶¶ 80-83.

[156] *Arnold v. Society for Sav. Bancorp, Inc.*, 678 A.2d 533, 536 (Del. 1996) (quoting *Drug, Inc. v. Hunt*, 168 A. 87, 93–94 (Del. 1933)).

[157] DMSJ at 30-31 (citing *Kuroda v. SPSJ Holdings, LLC*, 971 A.2d 872, 890 (Del. Ch. 2009)).

[158] *Id.* at 31 (citing Compl. ¶ 82).

[159] DMSJ Opp'n at 37-38.

generally allege that the defendant violated an independent legal duty, apart from the duty imposed by contract."[160] Cercacor doesn't dispute that Count VII is identical to its assertion that Metronom improperly used its contract-required cash infusions.[161] Cercacor maintains Count VII survives in the alternative, because "the parties still dispute whether the LOI governs."[162] Yet, nowhere do Defendants suggest the LOI is indeed unenforceable. Nor could they, given that the LOI is expressly titled "a binding agreement,"[163] and Defendants' Counterclaims are premised on the LOI's enforceability.[164] Accordingly, there is no genuine factual dispute that the LOI is enforceable—simply what it required of each party. So, Count VII need not and cannot proceed as an alternative here.

Summary judgment on Count VII is independently warranted because Cercacor's "conversion claim does not fall into the narrow exception to the general rule prohibiting claims for the conversion of money."[165] A conversion claim for cash can proceed "only where there is an 'obligation to return the identical money'

---

[160] *Kuroda*, 971 A.2d at 889.

[161] *See* DMSJ Opp'n at 37-39. *Compare* Compl. ¶¶ 50-55, *with id.* ¶¶ 80-83.

[162] DMSJ Opp'n at 37-38; *see* DMSJ Opp'n, Ex. 27 at 52 (denying Metronom's motion to dismiss Counts VII and VIII because, at that stage, "there has been at least some inconsistency in calling the LOI an enforceable agreement, and more importantly, what its effect is.").

[163] LOI at Preamble.

[164] Answer at 51-54 (alleging the "LOI is a binding and enforceable agreement.").

[165] *Kuroda*, 971 A.2d at 890 ("generally an action in conversion will not lie to enforce a claim for the payment of money" (citing *Carlton Invs. v. TLC Beatrice Int'l Hldgs, Inc.*, 1995 WL 694397, at *16 (Del.Ch. Nov.21, 1995)).

delivered by the plaintiff to the defendant."[166]   Cercacor doesn't allege any entitlement to the identical funds it gave Metronom.[167]   Hence, Cercacor's conversion claims is legally insufficient.

For one, the other, or both just-explained reasons, Defendants are due—and the Court **GRANTS**—summary judgment as a matter of law on Cercacor's Count VII.

### 7. Cercacor's Unjust Enrichment Claim (Count VIII) fails.

Count VIII alleges "Metronom was unjustly enriched by the receipt of [Cercacor's cash infusions] without working in good faith to negotiate a final agreement[.]"[168]   Unjust enrichment is "the unjust retention of a benefit to the loss of another, or the retention of money or property of another against the fundamental principles of justice or equity and good conscience."[169]

Metronom argues Cercacor's unjust enrichment claim fails "because the unjust enrichment claim is based entirely on funds provided by Cercacor pursuant to the LOI[.]"[170]   Cercacor again asserts Count VIII survives in the alternative, because

---

[166] *Goodrich v. E.F. Hutton Group, Inc.,* 542 A.2d 1200, 1203 (Del. Ch. 1988) (quoting *Lyxell v. Vautrin,* 604 F.2d 18 (5th Cir.1979)).

[167] *See* Compl. ¶¶ 80-83.

[168] *Id.* ¶¶ 84-86.

[169] *Schock v. Nash*, 732 A.2d 217, 232 (Del.1999).

[170] DMSJ at 32-33 (citing Compl. ¶¶ 85-86).

the parties dispute whether the LOI controls.[171]

An unjust enrichment claim "is not available if there is a contract that governs the relationship between the parties that gives rise to the [] [] claim."[172]  As with Count VII, Cercacor doesn't really dispute that its unjust enrichment claim is duplicative of Count II.[173]  Rather, Cercacor again argues that questions concerning the LOI's enforceability mandate denial of Defendants' Motion concerning Count VIII.[174]  Yet, as discussed above, there is no genuine dispute that the LOI is enforceable.  Therefore, Cercacor's argument provides no basis to deny Defendants' Motion that the LOI "may not provide the relief [Cercacor] wants does not mean its case is 'not controlled by the contract.'"[175]  Hence, the Court **GRANTS** Defendants' motion on Count VIII.

### B. DEFENDANTS' COUNTERCLAIM II IS IMPERMISSIBLY DUPLICATIVE, BUT THEIR COUNTERCLAIM I SURVIVES CERCACOR'S MOTION.

#### 1. There is a genuine factual issue as to Cercacor's alleged breach of the LOI (Counterclaim I).

Defendants' first Counterclaim alleges, "Cercacor breached . . . the LOI by

---

[171] DMSJ Opp'n at 37-38.

[172] *Kuroda*, 971 A.2d at 891.

[173] *See* DMSJ Opp'n at 37-39.

[174] *Id.*

[175] *Intermec IP*, 2021 WL 3620435, at *17 (quoting *S'holder Rep. Servs. LLC v. RSI Holdco, LLC*, 2019 WL 2207452, at *6 (Del. Ch. May 22, 2019)).

delaying and stalling the closing of the proposed transaction."[176] Cercacor advances two arguments as to why Counterclaim I fails.[177]

First, Cercacor says "Metronom suffered no damages" due to the alleged breach.[178] Cercacor labels the allegations that it "'dr[o]ve [Metronom] out of business, forced [it] to lay off its [] workforce and wind down its [] operation,'" as "false."[179] According to Cercacor, its capital infusions are the *only* thing that prevented Metronom's imminent bankruptcy.[180] In countering, Metronom suggests several types of damages it suffered due to Cercacor's alleged breach.[181]

Cercacor's second argument is that there is no evidence it breached the obligation to "'use good faith efforts to negotiate the Definitive Agreement . . . as

---

[176] Answer at 51-53. As evidence of this alleged breach Defendants assert that Cercacor "fail[ed] to send a draft Asset Purchase Agreement for nearly four full weeks after the LOI was signed, then sen[t] a flawed draft APA that did not reflect the terms of the LOI, and [] creat[ed] roadblocks to closing such as requiring releases from all of Metronom's noteholders . . . also failed to timely contact Metronom's China JV Partner to resolve issues it had in that regard." *Id.*

[177] PMSJ at 12-21.

[178] *Id.* at 13-18.

[179] *Id.* at 13.

[180] *Id.* at 13-14. Cercacor invokes: (i) "Metronom's answer and pleadings," (ii) deposition answers, and "Metronom's financial documents," to support its position that Metronom would have closed but for the LOI. *Id.* at 14-16.

[181] PMSJ Opp'n at 10-12, 15-16 (identifying as Metronom's damages: (1) "the increased cost of vacation and benefits . . . that were $47,639.53 higher than what Metronom would have had to pay its departing employees if it had ceased doing business on March 31, 2023"; (2) "$35,174.21 in costs to maintain [Metronom's] patents after March 30, 2023"; (3) "payment of taxes totaling $16,480 in 2024 which were required because of the continued existence of Metronom as a legal entity"; and (4) "the cost of paying three employees $208,563 over the course of several months to handle the wind down process.").

promptly as practicable.'"[182] Cercacor insists it tried to negotiate but Metronom's delayed diligence responses stalled the process.[183] Cercacor stylizes "Metronom's assurances" after the Demand Letters as "empty promises."[184] So, says Cercacor, the Proposed Transaction failed not for lack of trying by Cercacor.[185]

Metronom challenges Cercacor's position that it terminated the LOI because Metronom didn't cooperate with diligence.[186] Metronom contends it "actively participated" in negotiations and produced voluminous due diligence responses.[187] It insists that Cercacor's requests "for information that Metronom did not readily have available" caused any delays.[188] And lastly, Metronom reports it "notif[ied] its debtholders" and sought "release[s]."[189]

Just as with Cercacor's breach-of-contract claim, both sides proffer evidence supporting their story on the breach issue. And as well-understood the Court, on summary judgement, cannot weigh such conflicting evidence or make credibility

---

[182] PMSJ at 18-21 (quoting LOI § 2).

[183] *Id.* at 18-19.

[184] *Id.* at 20.

[185] *Id.* at 20-21.

[186] PMSJ Opp'n at 13-15.

[187] *Id.* at 13-14. Metronom further asserts "Cercacor's own Assistant Controller repeatedly thanked Metronom for information it proved." *Id.* at 14.

[188] *Id.*

[189] *Id.* at 14-15.

determinations.[190] With these genuine issues of material fact regarding Cercacor's alleged breach of the LOI lingering, summary judgment on the breach element of Defendants' Counterclaim I is inappropriate.

In Cercacor's view, Counterclaim I fails because Metronom suffered no damages.[191] The overwhelming evidence shows Metronom was near bankruptcy and had no other potential investors, when the parties signed the LOI.[192] Still, Defendants articulate specific damages they allegedly incurred but would not have sustained if the Proposed Transaction closed.[193] And Defendants point to evidence supporting those damage claims.[194]

Typically, "the issues of causation and damages are left for the jury."[195] Therefore, summary judgment is improper because a genuine issue of material fact

---

[190] *Bobcat N. Am., LLC v. Inland Waste Hldgs., LLC*, 2020 WL 5587683, at *7 n.64 (Del. Super. Ct. Sept. 18, 2020) ("If a trial court must weigh the evidence to a greater degree than to determine that it is hopelessly inadequate ultimately to sustain the substantive burden, summary judgment is inappropriate.") (internal quotation omitted); *Cerebus Int'l, Ltd. v. Apollo Mgmt., L.P.*, 794 A.2d 1141, 1150 (Del. 2002) ("If the matter depends to any material extent upon a determination of credibility, summary judgment is inappropriate.").

[191] PMSJ at 13-18.

[192] *E.g.*, Sanders Dec. ¶ 3; Wade Dep. at 54-55; Muhsin Dep. at 20, 25-26; Beach Rebuttal Report.

[193] *See supra* n.181.

[194] Declaration of Anrew Wade to Opposition to Plaintiff's Motion for Partial Summary Judgment (hereafter "Wade Dec.") ¶¶ 1, 3; Wade Dec. Exs. 1-4; Kristovich Dec., Ex. 9 ("Becker Dep.") at 81-82, 91-92.

[195] *Lipson v. Anesthesia Services, P.A.*, 790 A.2d 1261, 1290 (Del. Super. Ct. Oct. 3, 2001); *see Sears, Roebuck & Co. v. Huang*, 652 A.2d 568, (Del. 1995) ("The determination of proximate cause is a question of fact for the trier of facts.") (cleaned up).

regarding Defendants' damages also remains unresolved.[196]   Plaintiff's motion

seeking summary judgment on Defendants' Counterclaim I is **DENIED**.

## 2. Defendants' Implied Covenant Counterclaim (Counterclaim II) is impermissibly duplicative.

Defendants second Counterclaim alleges "Cercacor breached the covenant of

good faith and fair dealing."[197]   Cercacor maintains that Counterclaim II fails for

three reasons.[198]

First, Metronom doesn't show Cercacor's alleged breach caused any

damages.[199]   Second, the evidence shows Cercacor didn't breach any implied

obligation.[200]   Finally, Metronom did not identify a gap in the LOI, such that the

implied covenant applies.[201]   Too, Cercacor contends Metronom's three implied

covenant theories,[202] simply mirror Counterclaim I's assertions.[203]   Cercacor asserts

---

[196]  *Active Day*, 2024 WL 3201167, at *5 (holding a "breach claim survives summary judgment because Plaintiffs have presented credible evidence to support a claim for damages.").

[197]  Answer at 53-54. Defendants assert Cercacor "engag[ed] in arbitrary and unreasonable conduct including, among other things, delaying and stalling the asset purchase transaction, making unreasonable and unwarranted requests that Metronom secure releases from its noteholders and interfering with Metronom's relationship with its China JV partner." *Id.*

[198]  PMSJ at 21-27.

[199]  *Id.* at 21-22.

[200]  *Id.* at 22-24.

[201]  *Id.* at 24-27.

[202]  Metronom alleges Cercacor breached the implied covenant by "[1] delaying and stalling the asset purchase transaction, [2] making unreasonable and unwarranted requests that Metronom secure release from its noteholders and [3] interfering with Metronom's relationship with its China JV partner[.]" Counterclaim ¶ 31.

[203]  PMSJ at 25-26 (citing Counterclaim ¶ 25).

the obligation to "use good faith efforts to negotiate the Definitive Agreement . . . as promptly as practicable," fully addresses those allegations.[204]

Metronom insists its Counterclaims aren't duplicative.[205] According to Metronom, it's "not suing because Cercacor failed to provide a draft of the APA 'promptly,' but because the sloppy and inaccurate version of what Cercacor provided nearly four weeks after the LOI was signed demonstrates its bad faith and cavalier attitude towards the transaction."[206] That being so, says Metronom, Counterclaim II challenges actions that allegedly violated obligations outside the LOI.[207] Not so.

Counterclaim II's allegations and arguments are in all ways identical to Counterclaim I's.[208] As explained earlier, the implied covenant is available only when the underlying contract is "truly silent" on the contested issue.[209] Not so here.

The LOI required the parties to "use *good faith efforts* to negotiate the Definitive Agreement to effect the transactions contemplated by this Letter of Intent *as promptly as practicable*."[210] Cercacor's actions that allegedly breached the

---

[204] *Id.* at 26-27.

[205] PMSJ Opp'n at 17-20.

[206] *Id.* at 18.

[207] *Id.* at 19-20.

[208] *Compare* Answer at 51-53, *with id.* at 53-54.

[209] *Oxbow Carbon*, 202 A.3d at 507.

[210] LOI § 2.

implied covenant all sound in bad faith.[211]   Because the LOI's express language covers the challenged actions, there is no gap for the implied covenant to fill. Therefore, whether Cercacor impermissibly stalled the Proposed Transaction or failed to negotiate in good faith, is governed by the LOI's terms, not the implied covenant.  The Court **GRANTS** Cercacor's motion on Defendants' Counterclaim II.

## V.  CONCLUSION

For the foregoing reasons the Court **DENIES,** in part, and **GRANTS,** in part, Defendant Metronom and Mr. Bergheim's Motion for Summary Judgment—Cercacor's Counts II (Breach of the LOI), V (Tortious Interference with Contractual Relations against Mr. Bergheim), and VI (Tortious Interference with Prospective Business Relations Against Mr. Bergheim) survive for trial; Counts I (seeking a declaratory judgment), III (Breach of the Implied Covenant of Good Faith and Fair Dealing), IV (Fraudulent Inducement), VII (Conversion), and VIII (Unjust Enrichment) do not.

The Court similarly **DENIES,** in part, and **GRANTS,** in part, Cercacor's Motion for Partial Summary Judgment—Counterclaim I (Breach of the LOI) remains for trial; Counterclaim II (Breach of the Implied Covenant of Good Faith and Fair Dealing) does not.

**IT IS SO ORDERED.**

---

[211] *See supra* n.197.